UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CAMERON EIDMANN,<br><br>       Plaintiff,<br><br>   v.<br><br>WALGREEN CO.,<br><br>       Defendant. | Case No.  5:20-cv-04805-EJD<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 30 |

I. **BACKGROUND**

    In this putative class action, Plaintiff Cameron Eidmann ("Eidmann") alleges the marketing of Defendant Walgreen Co.'s ("Walgreens") Infants' Pain & Fever Acetaminophen is false and misleading and violates California consumer protection statutes.  Presently before the Court is Walgreens' Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  The Court finds it appropriate to take this motion under submission for decision without oral argument pursuant to Local Civil Rule 7-1(b).  For the reasons set forth below, Walgreens' motion is GRANTED.

I. **BACKGROUND**

    Walgreens is a national drugstore chain that sells brand-name products, as well as Walgreens-branded products, known as "private label" products.  Dkt. No. 24, First Amended Complaint ("FAC") ¶ 2.  Among Walgreens' portfolio of private label goods are over-the-counter pain relievers and fever reducers produced specifically for young children.  *Id.*  At issue are two private label acetaminophen products—one marketed as Walgreens Infants' Pain & Fever ("Infants' Product") and Children's Pain & Fever Acetaminophen ("Children's Product").  *Id.* ¶¶ 2, 5.  Prior to the time period at issue in this action, infant and children's products contained differing acetaminophen concentrations—with infant products containing 80 mg per mL, whereas

United States District Court<br>Northern District of California

1  children's product contained 160 mg per 5 mL of acetaminophen.  *Id.* ¶ 17.  In 2011,

2  manufacturers instituted an industry-wide effort to prevent accidental infant overdoses by

3  changing the concentration of liquid acetaminophen in infant's products to be the same as the

4  children's products at 160 mg per 5 mL.  *Id.* ¶ 22.

5  　　In line with this industry standard, Walgreens Infants' Product and Children's Product

6  have the same concentration of acetaminophen listed on the front of their respective packaging.

7  *Id.* ¶ 23.  Both packages also display the age ranges for the products with Infants' Product listing

8  "Ages 2-3 Years" and Children's Product listing "Ages 2-11 Years."  Dkt. No. 32 ("Walgreens

9  RJN"), Exh. 7.[1]  The products are distinguished by the depictions of the dosing mechanism.  The

10 Infants' Product displays a drawing of a syringe with the instruction to "Use only with enclosed

11 syringe," whereas the Children's product only displays a depiction of a dosing cup.  *Id.*  The

12 following are images of the product packaging:




25 *Id.*

[1] As discussed below, the Court grants Walgreens' unopposed Request for Judicial Notice of the product packaging pursuant to Federal Rule of Evidence 201(b).

Case No.: 5:20-cv-04805-EJD
ORDER GRANTING MOTION TO DISMISS

United States District Court
Northern District of California

1   Eidmann alleges that Walgreens "has been engaging in the unfair, unlawful, and deceptive

2   practice of manufacturing, marketing and selling its store brand pediatric acetaminophen as two

3   separate products." FAC ¶ 25.  This deception thus leads consumers to believe the Infants'

4   Product is specially formulated for infants since neither label indicates "that the formulation of the

5   two medicines is entirely identical." *Id.* ¶ 30.  As a result, consumers are injured because "the

6   Infants' Product can cost almost four times as much per ounce than the Children's Product, despite

7   being identical medicines." *Id.* ¶ 31.

8   In the summer of 2020, Eidmann filed his first complaint.  Several months later, Walgreens

9   filed a motion to dismiss.  Dkt. No. 19.  In lieu of filing a response, Eidmann filed the operative

10   First Amended Complaint.  Dkt. No. 24 ("FAC").  The FAC asserts four causes of action: (1)

11   violations of the California False and Misleading Advertising Law (FAL); (2) violations of

12   California's Consumer Legal Remedies Act (CLRA); (3) violation of the unfair and fraudulent

13   prong of California's Unfair Competition Law (UCL), and (4) violation of the unlawful prong of

14   the UCL.  *Id.*  Shortly after, Walgreens filed the instant motion to dismiss the FAC.  Dkt. No. 30

15   ("Mot.").  Eidmann filed an opposition.  Dkt. No. 34 ("Opp.").  Walgreens filed a reply.  Dkt. No.

16   36 ("Reply").

17   ## II.   LEGAL STANDARD

18   A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of claims

19   alleged in the complaint.  *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir.

20   1995).  When deciding whether to grant a motion to dismiss, the court must generally accept as

21   true all "well-pleaded factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009).  The court

22   must also construe the alleged facts in the light most favorable to the plaintiff.  *See Retail Prop.*

23   *Trust v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014) (providing

24   the court must "draw all reasonable inferences in favor of the nonmoving party" for a Rule

25   12(b)(6) motion.  Dismissal "is proper only where there is no cognizable legal theory or an

26   absence of sufficient facts alleged to support a cognizable legal theory." *Navarro v. Block*, 250

27   F.3d 729, 732 (9th Cir. 2001).

28   Case No.: 5:20-cv-04805-EJD
ORDER GRANTING MOTION TO DISMISS

Consumer-protection claims that sound in fraud, as Eidmann's do, are subject to the heightened pleading requirements of Fed. R. Civ. P. 9(b). *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1102 (9th Cir. 2003); *see also Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). Rule 9(b) requires that "a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). The circumstances constituting the fraud must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). Therefore, a party alleging fraud must set forth "the who, what, when, where, and how" of the misconduct. *Vess*, 317 F.3d at 1106 (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)).

## III.    DISCUSSION

### A.    Judicial Notice

Before addressing the merits of the motion, the Court first considers Walgreens' request for judicial notice, and Eidmann's request for judicial notice, Dkt. No. 35 ("Eidmann RJN").

As a general rule, the Court may not consider any material outside the pleadings in ruling on a Rule 12(b)(6) motion. *United States v. Corinthian Colleges*, 655 F.3d 984, 998 (9th Cir. 2011). There are two exceptions to this rule: when the complaint necessarily relies on the documents (incorporation by reference), and when the documents are "matters of public record" under Fed. R. Evid. 201(b). *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001). The incorporation by reference doctrine allows for the consideration of material that is attached to the complaint, as well as for the consideration of "unattached evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to plaintiff's claim; and (3) no party questions the authenticity of the document." *Corinthian Colleges*, 655 F.3d at 999.

Under the Federal Rules, a court may also take judicial notice of a fact that is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy

1   cannot reasonably be questioned."  Fed. R. Evid. 201(b).

2        Both parties submit documents from similar sources, so the Court will consider them

3   together.  Neither party has opposed the requests for judicial notice.

4                    **i.   Public Records**

5        Walgreens requests judicial notice of regulations promulgated by the Food and Drug

6   Administration ("FDA").  Walgreens RJN, Exh. 1.  Documents published in the Federal Register

7   are proper for judicial notice.  *See* 44 U.S.C. § 1507 ("The contents of the Federal Register shall

8   be judicially noticed).  Therefore, the Court GRANTS Walgreens' Request for Judicial Notice as

9   to the FDA regulations.

10                   **ii.   Documents from Government Website**

11       Walgreens requests judicial notice of information related to the concentration of

12   acetaminophen in infant medicine published on the FDA website.  Walgreens RJN, Exh. 2-4.

13   Likewise, Eidmann requests judicial notice of FDA webpages related to the regulatory process for

14   over-the-counter drugs.  Eidmann RJN, Exh. 1-2.

15       Documents published on government-run websites are proper for judicial notice given their

16   reliability.  *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (appropriate

17   to take judicial notice of information made publicly available by government entities and where

18   neither party disputes the authenticity of the website source); *Gerritsen v. Warner Bros. Entm't

19   Inc.*, 112 F. Supp. 3d 1011, 1034 (C.D. Cal. 2015) (profiles on California Secretary of State

20   website proper for judicial notice).

21       Since both parties' documents were published to the FDA website, coupled with the fact

22   that neither party contests the accuracy of the documents, the Court will take judicial notice of the

23   FDA webpages submitted by Walgreens and Eidmann.

24                   **iii.   Photo Images of Product Labels**

25       Walgreens further seeks judicial notice of three images: (1) the product label for Infants'

26   Product, (2) the product label for Children's Product, and (3) a side-by-side comparison of the two

27   images.  Walgreens RJN, Exh. 5-7.

28   Case No.: 5:20-cv-04805-EJD
     ORDER GRANTING MOTION TO DISMISS

United States District Court
Northern District of California

1    Exhibits 5-7 meet the standard for judicial notice under the doctrine of incorporation by

2    reference.  Eidmann makes numerous references to both product labels in the Amended

3    Complaint.  *See* Compl. ¶¶ 26-28.  Moreover, the labels are central to Eidmann's claims because it

4    is the information conveyed on the Infants' Product packaging that Eidmann alleges was false or

5    misleading.  *Id.* ¶ 35.  Importantly, Eidmann does not dispute the authenticity of the product

6    labels.  Therefore, the Court GRANTS Walgreens' Request for Judicial Notice regarding Exhibits

7    5-7.

8        **iv.    Court Filings**

9        The final materials requested for judicial notice by Walgreens are court orders from three

10   cases in the Northern and Central Districts of California: *Danielle Lokey v. CVS Pharmacy, Inc.*,

11   Case No. 3:20-cv-04782-LB; *Rony Elkies, et al. v. Johnson and Johnson Services, Inc. et al*, Case

12   No. 2:17-cv-07320-GW-JEM, and *Brian Youngblood, et al v. CVS Pharmacy*, Case No. 2:20-cv-

13   06251-MCS-MRW.  Walgreens RJN, Exh. 8-13.  Pursuant to Civil Local Rule 3-4, this Court may

14   consider the orders and opinions of federal courts—even those solely available on an electronic

15   database—as long as the order is not designated "Not For Citation" under Civil Local Rule 7-14 or

16   similar rules of other jurisdictions.  Thus, the Court may consider these cases as persuasive

17   authority, but need not grant judicial notice of the orders.

18       Accordingly, the Court DENIES Walgreens' Request for Judicial Notice regarding

19   Exhibits 8-13.

20       **B.    Claims Under the FAL, CLRA, and UCL**

21       Eidmann asserts four causes of action against Walgreens: (1) violation of California's

22   FAL; (2) violation of the CLRA; (3) violation of the fraudulent and unlawful prongs of the UCL;

23   and (4) violation of the unfair prong of the UCL.

24       The FAL prohibits false advertising by making it unlawful to disseminate to the public any

25   information related to disposal of goods or performance of services that "is untrue or misleading,

26   and which is known, or . . . should be known, to be untrue or misleading."  Cal. Bus. & Prof. Code

27   § 17500.  Similarly, the CLRA prohibits specific "unfair methods of competition and unfair or

28   Case No.: 5:20-cv-04805-EJD
     ORDER GRANTING MOTION TO DISMISS

United States District Court
Northern District of California

deceptive acts . . . intended to result or that results in the sale or lease of goods or services to any customer."  Cal. Civ. Code §1770(a).

The UCL provides a cause of action for "any unlawful, unfair, or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.  Each of these "prongs" under the UCL creates an independent theory of liability.  *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1089 (N.D. Cal. 2017).  Eidmann asserts claims under each of these prongs of the UCL.  The Court will therefore address these three prongs separately.

Eidmann grounds his claims under the FAL, CLRA, and UCL on the theory that Walgreens' packaging and marketing of the Infants' Product misled customers into believing the product is specially formulated for infants, thereby inducing customers into paying a premium price.  Because Eidmann's allegations rest upon this unified theory, all of his claims must "rise or fall together."  *Id*.  Therefore, the Court will consider these three causes of action together.

### i.    Fraud-Based Claims under FAL, CLRA, and UCL

Conduct that is considered deceptive or misleading runs afoul of the FAL, CLRA, and fraudulent prong of the UCL when it is "likely to deceive" a "reasonable consumer."  *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008).  Because each of these statutes is governed by the "reasonable consumer" test, courts tend to analyze the three statutes together.  *See Hadley*, 243 F. Supp. 3d. at 1089; *Fitzhenry-Russell v. Coca-Cola Co.*, No. 5:17-CV-00603-EJD, 2017 WL 4680073, at *3 (N.D. Cal. Oct. 18, 2017).  The reasonable consumer standard "requires a probability 'that a significant portion of the general consuming public . . . could be misled.'"  *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (citing *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 129 Cal. Rptr. 2d 486, 495 (2003)).

Walgreens argues that Eidmann cannot show a reasonable consumer would be deceived by the Infants' Product.  Mot. at 9.  In support, Walgreens relies on a similarly situated case decided recently in the Northern District of California.  *Lokey v. CVS Pharmacy, Inc.*, No. 20-CV-04782-LB, 2020 WL 6822890, at *1 (N.D. Cal. Nov. 20, 2020).  In *Lokey*, the court granted defendant CVS's motion to dismiss the plaintiff's claims that CVS's private label infant acetaminophen

violated the FAL, CLRA, and UCL.  *Id.*  Notably, the plaintiff's claims in *Lokey* were remarkably similar to this case, alleging that the CVS-brand product "deceives reasonable consumers . . . into believing that Infants' acetaminophen is specially formulated for children under two and that customers should pay vastly more" than they pay for the identically formulated children's acetaminophen product.  *Id.* at *2.  In its analysis, the Court compared the two products' packaging and ultimately concluded that "the labels here are not deceptive."  *Id.* at 5.  In reaching its decision, the Court explained:

> The labels here are not deceptive. The front label shows that the medicines are compositionally the same. The products have different devices to deliver the doses (a syringe for infants and a cup for children), also displayed on the front label. The pictures (a child of indeterminate age on the infants' label and an older child on the children's label) or the dosing instructions do not plausibly suggest different formulations, given the front-label representation about the composition of the medicines. In sum, nothing on the labels is deceptive, and the plaintiff's subjective belief of deception fails the reasonable-consumer test . . .  Because the label is not deceptive, and the plaintiff's subjective interpretation fails the reasonable-consumer test, the plaintiff's challenge to the differential pricing fails.

*Lokey*, 2020 WL 6822890, at *5 (N.D. Cal. Nov. 20, 2020) (citations omitted).

There are several similarities between the products at issue here and those at issue in *Lokey*.  First, the acetaminophen concentration on the Infants' Product and Children's Product is prominently listed in bolded lettering as "160 mg per 5 mL" on the front of the package.  Walgreens RJN, Exh. 7.  In addition, the concentration is also listed in bold lettering on top of the packaging and in highlighted text in the "Drug Facts" section on the back of the packaging.  Walgreens RJN, Exh. 5.  Second, the Walgreens packaging indicates the inclusion of the medicine's dosing mechanism—a syringe for infants and a cup for children.  Walgreens RJN, Exh. 7.  In particular, the front of the Infants' Product packaging instructs consumers to "use only with enclosed syringe."  Walgreens RJN, Exh. 5.  Moreover, the side of the packaging notes the "enclosed syringe [is] specifically designed for use with this product."  *Id.*  Thus, the infant-specific branding is less suggestive of a formulation specially designed for infants, as Eidmann alleges, rather it more reasonably pertains to the infant-specific dosing mechanism included to administer the product.

United States District Court
Northern District of California

1   The differences between the Walgreens products at issue here and the CVS products in

2   *Lokey* are also instructive.  Unlike in *Lokey*, Walgreens' Infants' Product discloses the intended

3   age range as "ages 2-3 years," which overlaps with the age range indicated on the Children's

4   Product, which is "ages 2-11 years."  *Id*.  Therefore, a consumer could readily compare the

5   products and find not only that they contain the same acetaminophen concentration, but also that

6   they can be used by children of identical ages.  Moreover, the depictions of children on the

7   Infants' Product and Children's Product are cartoon-like illustrations, not photographs.  *Id*.  It is

8   hard to imagine that a reasonable consumer would believe the medicine is specially formulated for

9   infants based on an illustration, especially one so simplistically one-dimensional as the one on the

10  Infants' Product.  *See Werbel ex rel. v. Pepsico, Inc.*, No. C 09-04456 SBA, 2010 WL 2673860, at

11  *3 (N.D. Cal. July 2, 2010) (cartoon depictions of Cap'n Crunch "Crunch Berries" belies any

12  suggestion the cereal "has some nutritional value derived from fruit").

13  Nevertheless, Eidmann argues that the court in *Lokey* "got it wrong" and this Court should

14  instead rely upon two cases from the Central District of California—*Elkies v. Johnson & Johnson*

15  *Servs, Inc.*, No. 17-cv-07320-GW, ECF No. 53 (C.D. Cal. Feb. 22, 2018), and *Youngblood. v.*

16  *CVS*, No. 2:20-cv-06251-MCS-MRW, ECF No. 31 (C.D. Cal. Oct. 15, 2020).  Opp. at 7, n.3.

17  Both cases follow similar contours: plaintiffs claimed infant acetaminophen products deceived

18  customers into paying higher prices for a drug with the exact formulation as its cheaper, children's

19  formula counterpart.  However, both cases are readily distinguishable from the case at hand.

20  In *Elkies*, the court considered the packaging of infant and children's Tylenol products and

21  found that the "[d]efendants also purposefully package Infants' with a picture of a mother holding

22  her young baby under the word 'Infants,' with no age range listed, while Children's contains a

23  mother hugging her significantly older child under the description 'Ages 2-11 Years.'"  *Elkies*,

24  No. 17-cv-07320, at 2.  Based on these depictions and no "express disclosure that the medicine in

25  the bottle is exactly the same, and provided at the exact same concentration," the court denied the

26  motion to dismiss.  *Id*. at 8.

27  In *Youngblood*, the court built on the decision in *Elkies* by addressing a CVS-branded

28  Case No.: 5:20-cv-04805-EJD
ORDER GRANTING MOTION TO DISMISS

United States District Court
Northern District of California

infant acetaminophen product that was similar to the Tylenol product in *Elkies*, but which disclosed the identical concentration of acetaminophen. *Youngblood*, 2:20-cv-06251, at 7. Despite these disclosures, the *Youngblood* court held that plaintiffs plausibly alleged the packaging could be misleading. *Id*. at 8. In particular, the court found the photograph depictions "of what appears to be a mother holding a young child [on the Infants' Product] relative to the older child featured on the Children's Product" to be dispositive. *Id*. at 7. These photographs on the front of the CVS packages, coupled with the fact "the Product prominently suggests that it is for 'infants'" ultimately cut against defendant's claims that no reasonable consumer would be misled to believe the product was specifically formulated for infants. *Id*.

In this case, however, neither of the determinative factors of *Elkies* or *Youngblood* are present. The Walgreens Infants' Product displays overlapping age ranges and identical acetaminophen concentration information in large print on the front of the box. *Cf. Mullins v. Premier Nutrition Corp.*, 178 F. Supp. 3d 867, 892 (N.D. Cal. 2016) (inclusion of ingredients list does not shield manufacturers since it is not reasonable to expect consumers to discover truth in fine print on side of the box). Moreover, the pictures on the Walgreens label are stylized cartoon-like depictions of children, unlike the photographs on the products at issue in *Elkies* and *Youngblood*. Nevertheless, Eidmann argues the inclusion of the word "infants" in the name would lead a reasonable consumer to construe the product as specially formulated for infants. Opp. at 8 (citing *Mullins*, 178 F. Supp 3d at 891 ("[Defendant] cannot run from the fact that it sells Joint Juice. The name alone implies that the whole point to drinking the product is to receive joint health benefits.")). However, *Mullins* is readily distinguishable from this case. In *Mullins*, the plaintiff claimed the health drink's name and packaging was false and misleading because it implied the beverage would "relieve joint pain and stiffness." *Id*. at 889. Here, Eidmann does not dispute the effectiveness of Infants' Product to quell pain and reduce fevers in infants. Rather, he asserts the product name further implies that the medicine is specially formulated for infants. The Court finds this rationale unpersuasive. No reasonable consumer would understand Infants' Product to be specially formulated, in light of the numerous express statements regarding the

acetaminophen concentration, overlapping age ranges, and the infant-specific dosing mechanism. *See Dinan v. Sandisk LLC*, No. 18-CV-05420-BLF, 2019 WL 2327923, at *7 (N.D. Cal. May 31, 2019) ("What ultimately dooms Plaintiff's claims is that Defendant tells the consumer exactly what she is getting").

Walgreens further argues that, barring any finding that the packaging is misleading, Eidmann's claims "amount to nothing more than a complaint about pricing differences." Mot. at 16. Eidmann, however, contends the pricing information itself is not deceptive, rather it is evidence of "how Plaintiff and the Class were economically injured." Opp. at 10. As a general matter, "price regulation is a political question beyond the judiciary's authority." *Boris v. Wal-Mart Stores, Inc.*, 35 F. Supp. 3d 1163, 1172 (C.D. Cal. 2014), *aff'd*, 649 F. App'x 424 (9th Cir. 2016). In *Boris*, the court considered Wal-Mart's marketing of two over-the-counter headache medications with identical active ingredients, which were differentiated by their names, prices, and the background color on the packaging. *Id*. at 1165. The *Boris* plaintiffs alleged the "price differential along with [Equate Migraine's] red background 'deceived [consumers]" into thinking it was more effective than it's "Extra Strength" counterpart. *Id*. However, the court dismissed the plaintiff's FAL, CLRA, and UCL claims because the packaging and price differentials were not deceptive. *Id*. at 1170. Absent any deception by the defendant, the *Boris* court refused to adjudicate Wal-Mart's pricing decisions. *Id*. at 1172. In this case, as in *Boris*, Eidmann has failed to show how Walgreens' marketing of Infants' Product is false and misleading. Therefore, Eidmann cannot challenge Walgreens' pricing decisions.

Based on the foregoing, it is not plausible that a "significant portion of the general consuming public" would be misled to believe that Infants' Product is specially formulated for infants. *Ebner*, 838 F.3d at 965. Therefore, Eidmann has failed to state a claim that Infants' Product is misleading or deceptive under the FAL, CLRA, and fraudulent prong of the UCL.

### ii.   Fraudulent Omission Claims

In addition to alleged misrepresentations above, Eidmann also asserts violations of the FAL, CLRA, and UCL based upon an omission theory. *See* FAC ¶¶ 81, 92, 101. Eidmann argues

Case No.: 5:20-cv-04805-EJD
ORDER GRANTING MOTION TO DISMISS
11

United States District Court
Northern District of California

that Walgreens failed to expressly state that the Infants' Product and Children's Product contain identical formulations, which he alleges is contrary to the "affirmative representations . . . that the Infants' Product is *for infants*."  Opp. at 9.  Eidmann further argues that Walgreens was obligated to disclose this information to consumers.  *Id*.

A plaintiff may base a claim on an alleged omission if the omitted fact is (1) contrary to a [material] representation actually made by the defendant or (2) is a fact the defendant was obligated to disclose.  *Sud v. Costco Wholesale Corp.*, 229 F.Supp.3d 1075, 1085 (N.D. Cal. 2017) (quoting *Daugherty v. Am. Honda Motor Co.*, 144 Cal.App.4th 824, 835, 51 Cal.Rptr.3d 118 (2006)).  Thus, under this latter omission theory, there must be a duty to disclose the omitted facts "even in the absence of a particular representation."  *Beyer v. Symantec Corp.*, 333 F. Supp. 3d 966, 978 (N.D. Cal. 2018).  The duty to disclose arises when: (1) when the defendant is the plaintiff's fiduciary; (2) when the defendant has exclusive knowledge of material facts not known or reasonably accessible to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations that are misleading because some other material fact has not been disclosed.  *Hodson v. Mars, Inc.*, 891 F. 3d 857, 862 (9th Cir. 2018) (citing *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336, 60 Cal.Rptr.2d 539 (1997)).

Under the first omission theory, Eidmann claims "Walgreens affirmatively states and implies that the Product is unique and/or specially designed and formulated for infants," and that Walgreens' failure to disclose the allegedly contrary information that Infants' and Children's Products contained the same formula constitutes a fraudulent omission.  Opp. at 9.  However, Eidmann cannot point to any affirmative statements that Infants' formula is unique or distinct from Children's.  Moreover, for all the reasons stated above, the Court does not find that the packaging implies an infant-specific formulation, especially considering the numerous representations on the packaging that *do* state the identical formulations.  Therefore, Eidmann's argument fails because the allegedly omitted fact is not contrary to any of the representations on the Infants' Product packaging.

Case No.: 5:20-cv-04805-EJD
ORDER GRANTING MOTION TO DISMISS
12

1   Turning to the second omission theory, Eidmann fails to adequately plead that Walgreens

2   has a duty to disclose that the Infants' Product is identical to the Children's Product.  Eidmann

3   does not put forth any facts to establish a fiduciary relationship between himself and Walgreens.

4   More importantly, Eidmann cannot show the allegedly omitted information is within the exclusive

5   knowledge of Walgreens.  Indeed, there are numerous disclosures on the packaging that would

6   allow consumers to ascertain that the products contain identical formulations.  Because Eidmann

7   fails to allege that Walgreens is under an obligation to disclose this information, his claims under

8   this omission theory also fail.

9   Based on the foregoing, the Court GRANTS Walgreens' motion to dismiss Eidmann's

10   claims under the FAL, CLRA, and UCL based on fraudulent omission theories.

11   ### iii.   The Unlawful and Unfair Prongs of the UCL

12   Eidmann further alleges the violations of the FAL, CLRA, and UCL "constitute predicate

13   acts which violate the UCL's 'unlawful prong.'" FAC ¶ 117.  However, a claim under this prong

14   hinges upon whether a plaintiff can formulate a claim under the predicate law.  *Hadley*, 243 F.

15   Supp. 3d at 1094.  Thus, if the "plaintiff cannot state a claim under the predicate law . . . [the

16   UCL] claim also fails." *Id.* (citing *Stokes v. CitiMortgage, Inc.*, 2014 WL 4359193, at *11 (C.D.

17   Cal. Sept. 3, 2014)).  Moreover, when the claim under the UCL unlawful prong is grounded in

18   fraud, the plaintiff must meet the heightened pleading standard under Rule 9(b).  *Wilson v. Frito-*

19   *Lay N. Am., Inc.*, No. 12-1586 SC, 2013 WL 1320468, at *5 (N.D. Cal. Apr. 1, 2013).

20   Eidmann bases his unlawful arguments on the same alleged conduct the Court found

21   inadequate under the fraudulent misrepresentation and omission theories above.  Because Eidmann

22   failed to allege violations of the FAL, CLRA, and UCL pursuant to Rule 9(b), he is precluded

23   from utilizing these violations as predicate acts under the unlawful prong of the UCL.

24   Likewise, Eidmann's claim under the unfair prong of the UCL fails for similar reasons.  In

25   this District, when plaintiff's claim under the unfair prong overlaps entirely with the conduct

26   alleged in the fraudulent and unlawful prongs of the UCL, "the unfair prong of the UCL cannot

27   survive if the claims under the other two prongs . . . do not survive." *Hadley*, 243 F. Supp. 3d at

28

1105.  Here, Eidmann alleges Walgreens' practices "are unfair because . . . he was deceived into

thinking Infants' was specially formulated."  FAC ¶ 105.  This claim consists entirely of the

allegations also proffered to support Eidmann's claim under the fraudulent prong of the UCL.  *See*

FAC ¶ 104.  Therefore, for the same reasons the Court granted Walgreens' motion to dismiss

claims under the fraudulent and unlawful prongs of the UCL, the Court GRANTS Walgreens'

motion to dismiss Eidmann's claim under the unlawful prong of the UCL.

## IV.   CONCLUSION

For the reasons set forth above, the Court GRANTS Walgreens' Motion to Dismiss all

claims under the FAL, CLRA, and UCL.

Under Federal Rule of Civil Procedure 15(a), leave to amend "should be freely granted when

justice so requires."  When dismissing a complaint for failure to state a claim, a court should grant

leave to amend "unless it determines that the pleading could not possibly be cured by the

allegation of other facts."  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).  The Court finds

that leave to amend would be futile in this case for several reasons.  First, Eidmann has already

had the opportunity to amend his claims in the FAC.  Second, because the Court's analysis is

based in large part on the express disclosures on the Infants' Product packaging, which are

undisputed, there are no further facts Eidmann can allege to cure the complaint.  For these reasons,

Eidmann's claims are dismissed with prejudice.

**IT IS SO ORDERED.**

Dated:  February 26, 2021

EDWARD J. DAVILA
United States District Judge